**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**The FIRST NATIONAL BANK OF ATLANTA, GEORGIA, Defendant-Third-Party Plaintiff-Appellee,**

**The GREAT ATLANTIC AND PACIFIC TEA COMPANY, Third-Party Defendant-Appellee.**

**No. 30308.**

United States Court of Appeals, Fifth Circuit.

May 4, 1971.

John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., Johnnie M. Walters, Asst. Atty. Gen., Tax Division, Alexander P. Humphrey, Civil Div., Appellate Section, Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., William D. Ruckelshaus, Asst. Atty. Gen., for plaintiff-appellant.

W. Rhett Tanner, for defendant-appellee; Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for third party defendant.

W. Lyman Dillon, Thomas T. Holland, Atlanta, Ga., for Third Party Defendant.

Before THORNBERRY and GODBOLD, Circuit Judges, and BOOTLE, District Judge.

BOOTLE, District Judge:

In this action, the United States, as drawee on certain government checks, seeks to recover the amount of those checks paid to appellee, The First National Bank of Atlanta, Georgia, who, as collecting bank, had presented the checks under a guarantee of prior endorsements to and received payment from the United States, the endorsements of the payee on the checks allegedly being forged. The trial court dismissed the complaint on the ground that "where the United States has paid a Government check bearing a forged or unauthorized indorsement of the payee's name but has not otherwise suffered any loss—for instance by having subsequently paid the original debt or claim to the payee out of a contingency or insurance fund—it may not maintain an action as drawee against a collecting bank for breach of warranty of prior indorsements."

The checks in question were issued to Kasar Manufacturing and Distributing Company (Kasar) in payment of supplies ordered and received by the United States Air Force. Allegedly these checks were endorsed, without authority, by an employee of Kasar, in Kasar's name, and negotiated through the Great Atlantic and Pacific Tea Company (A&P), the third party defendant in this action, and the proceeds therefrom were converted by the employee to his own use. The A&P in turn deposited the checks in its account at defendant First National Bank. The checks were then presented by First National, and paid by the Treasurer, through the appropriate Federal Reserve Bank, the checks having affixed thereto a notation by First National that all prior endorsements were guaranteed. Kasar's insurance carrier, the American Insurance Company of Los Angeles, California, paid Kasar for the loss occasioned by the misappropriation of the checks by its employee and claims the rights of Kasar by subrogation. American filed a claim with the United States for the full amount of the misappropriated checks under 31 U.S.C. § 562; however, no payment has been made by the government because it claims that the Check Forgery Insurance Fund, 31 U.S.C. § 561 et seq. provides no funds with which to pay a subrogee. (The government does, however, recognize its obligation to pay the claimed amounts and asserts that it was for the purpose of obtaining the necessary funds that this action was instituted.)

The government made formal demand on First National for refund which was refused; thereafter this suit was instituted. First National moved to dismiss upon three grounds: first, that the government had suffered no loss; second, that the government was not the real party in interest and in effect was suing for the insurance carrier, and, third, laches. The court below dismissed the action on the first ground asserted and failed to reach the other grounds. Since

we conclude that the motion to dismiss was improperly granted the decision of the lower court must be reversed. However, in doing so, we express no opinion as to the merits of the grounds of the motion not reached below and leave them for full consideration by that court. Nor do we reach any of the pleaded defenses as they must first have consideration and determination in the trial court.

■ The trial court correctly recognized that the law to be applied to this case is federal law. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). But the court found that "there is presently no federal substantive law binding this Court on the issue at bar: whether the United States can, as a drawee, maintain an action against a collecting bank for breach of warranty on an unauthorized indorsement, where the government has not yet suffered an actual loss, for instance by double payment." As a result, under the principles set forth in *Clearfield*, the court proceeded to fashion the law which should govern the rights of the parties, and in so doing, looked to what it found to be the law accepted by many states in this field. Had there been no governing body of substantive federal law on this question, resort to this procedure by the district court would not be improper. However, as will be set forth below, irrespective of the validity of the trial court's interpretation of the law as recognized by various state courts, we find that the question is controlled by a substantial body of federal law.

In Leather Manufacturers' Nat. Bank v. Merchants' Nat. Bank, 128 U.S. 26, 9 S.Ct. 3, 32 L.Ed. 342 (1888), a case involving a drawee bank seeking a refund from the collecting bank on a check bearing a forged endorsement, the main issue for decision was whether the Statute of Limitations of New York barred the action. Before this question could be resolved, however, the Court first had to determine when the cause of action accrued, whether at the time the drawee bank made payment of the check or only after a demand for its repayment had been made. The Court stated:

"Whenever money is paid upon the representation of the receiver that he has either a certain title in property transferred in consideration of the payment, or a certain authority to receive the money paid, when in fact he has no such title or authority, then, although there be no fraud or intentional misrepresentation on his part, yet there is no consideration for the payment and the money remains, in equity and good conscience, the property of the payer, and may be recovered back by him, without any previous demand, as money had and received to his use. *His right of action accrues, and the Statute of Limitations begins to run, immediately upon the payment.*" *Id.* at 35, 9 S.Ct. at 5 (emphasis supplied).

■ Implicit in the reasoning of the Supreme Court is the fact that the payment by the drawee bank to the collecting bank constitutes a loss to the drawee bank immediately upon the payment. "The money remains in equity and good conscience, the property of the payer, and may be recovered back by him"—the property of the payer in the hand of one who in equity and good conscience is not entitled to it. This loss alone is sufficient to give rise to a cause of action for its recovery, and it arises immediately upon the mistaken payment, not at some later time. The Court there was not confronted with the precise question which we have here, that is, whether some loss in addition to the initial payment must occur before a cause of action can arise. Nevertheless, the reasoning of that decision must necessarily dispose of the question now before us. Elemental legal theory teaches that a harm (or loss) sufficient to start the running of a statute of limitations is sufficient to give rise to a cause of action for its remedy. A statute of limitations begins to run on the first day on which a cause of action could

have been brought; [1] therefore, since the statute of limitations in cases of this nature begins to run on the date of payment on a forged endorsement, a cause of action must necessarily arise on that date. A loss is presupposed. How, if a cause of action arises on the date of payment, could any loss other than that occasioned by this first payment occur before the cause of action arises? We think that the *Leather Manufacturers* case clearly stands for the proposition that payment alone by a drawee bank on a check bearing a forged endorsement causes a loss sufficient for that bank to bring an action for its recovery.[2]

In 1909, in the case of United States v. National Exchange Bank of Providence, 214 U.S. 302, 303, 29 S.Ct. 665, 53 L.Ed. 1006, the principles established in Leather Manufacturers' Nat. Bank v. Merchants' Nat. Bank, were, in effect, reaffirmed. There, the Court was grappling with the problem of whether the United States through failure to make demand or give notice was precluded from recovering from the collecting bank on checks honored by the United States on which there were forged endorsements. In holding that the United States was not so precluded the Court stated:

"Under these conditions the warranty of genuineness implied by the presentation and collection of the checks bearing the forged indorsement having been broken at the time the checks were cashed by the United States, *and the cause of action having therefore then accrued,* the right to sue to recover back from the Exchange Bank was not conditioned upon either demand or the giving of notice of the discovery of facts which, by the operation of the legal warranty, were presumably within the knowledge of the defendant." *Id.* at 320, 29 S.Ct. at 671. (emphasis supplied).

If, therefore, the warranty was broken at the time the United States cashed the checks and the cause of action then accrued, a loss must have occurred at that point, which loss would have been sufficient for the United States to institute legal action for recovery of the loss. This being so, how then would it be possible for the United States to suffer any additional loss before the cause of action arose since the action arose simultaneously with payment? It must be concluded, therefore, that payment alone is sufficient loss on which to institute legal action.[3]

In the leading case in this area of the law, Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), the Supreme Court clearly affirmed the principle that payment by a drawee bank on a check bearing a forged endorsement gives rise to a cause of action by the bank to recover back the money paid at the time of payment. There the Court abandoned the terminology "cause of action" previously

---

1. It is axiomatic that before a statute of limitations can begin to run there must be a right of action on which it is to run. To be able to avoid being trapped by the statute having expired it is necessary that a party bring his action sometime during the period between the time when the statute begins to run and the time when it has run. This being the case, it is necessarily presupposed that the right of action which is sufficient to start the statute is sufficient on which to bring suit; otherwise, there would be cases where the statute has begun to run but the party would be unable to bring suit. Such a situation would be opposed to logic and reason and would be completely contrary to accepted legal theory.

2. The United States as a drawee of commercial paper would stand in the same position as that of any drawee; therefore, the principles applicable to the private banks in the Leather Manufacturers case would also be applicable to the United States here. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838.

3. The fact that the Supreme Court was faced with legal questions different from those with which we are here faced in no way detracts from our use of the legal reasoning employed by them to the resolution of the questions here presented.

used and spoke of "the right to recover." "But whatever theory is taken (to justify recovery), we adhere to the conclusion of the National Exchange Bank case (United States v. National Exchange Bank discussed supra) *that the drawee's right to recover accrues when the payment is made. There is no other barrier to the maintenance of the cause of action."* Id. at 368, 63 S.Ct. at 576 (emphasis supplied). Thus, it would not be necessary or even possible for the drawee to recredit the drawer's account or make a second payment or take any other action to establish further loss before the right to recover accrues. This fact, more than anything else, would refute the notion that a second payment is necessary before suit may be brought. Such language as that employed by the Supreme Court necessarily presupposes that a loss has occurred; that that loss alone is sufficient to support legal action.

Inherent in the reasoning of all the cases heretofore discussed is the fact that a loss has been suffered by the drawee bank immediately upon payment of a check with a forged endorsement. In legal contemplation, a bank paying out money on a forged endorsement pays out its own funds, rather than those of the drawer. 10 Am.Jur.2d § 622, and cases cited therein. Thus, as stated in the *Leather Manufacturers* case, the money so paid remains that of the bank, even though in the hands of an innocent party, and the bank immediately on payment has a right to recover it back. This right is not dependent on what may later occur between the parties, although conceivably future occurrences could erase the right of action, as for example, where the bank in some manner is relieved of its loss by third parties as occurred in the state case of County Bank of Greenwood v. South Carolina National Bank, 244 S.C. 327, 137 S.E.2d 281, relied on by the court below to support its theory that some additional loss other than payment is necessary. In that case the drawer of the check on which the payee's endorsement had been forged, and on which endorsement the drawee bank relied in making payment, was reimbursed by the employer of the forger. Thereafter the drawee bank brought an action against the collecting bank for recovery of the check. The court in dismissing the action stated:

"The collection of their loss in full by the drawers of the checks from the employer of the forger precluded them from proceeding against the plaintiff (drawee bank). If the drawers cannot collect from the plaintiff, obviously the plaintiff cannot recover from the defendant (collecting bank) for it has suffered no loss from the forgeries."

(Although requiring a loss for maintenance of a legal action, this case in no way militates against the theory that an undischarged legal obligation would be an adequate loss to support legal action.)

This court in Fourth Nat. Bank in Wichita, Kansas v. Gainesville Nat. Bank, 80 F.2d 490 (1935), in determining whether the statute of limitations had run in a situation involving a forged endorsement was faced with the problem of when the cause of action accrued. There, we said at 490:

"When did its cause of action arise? The contract of each defendant is 'Prior indorsements guaranteed.' We construe this to mean, the validity of prior indorsements is warranted. It is not a contract of indemnity against ultimate loss. The warrantor is bound on demand to pay back the money gotten for the check if any prior indorsement is not valid. *He cannot insist that his indorsee wait to see whether any loss will actually occur.* There may be dispute, as there was here, about the genuineness of the indorsement, and there may be difficulty in making proof, *but that does not postpone the accrual of the right of action for breach of the guaranty. It accrues at the moment that the check is negotiated under a prior invalid indorsement."* (emphasis supplied).

It is patently plain that we in the *Gainesville National Bank* case dispensed with the necessity of awaiting future developments in order to determine *actual* loss. The cause of action arises immediately upon payment. The fact that in this case we were concerned with determining whether the statute of limitations had run in no way detracts from the validity of applying the reasoning there used to the situation at hand. As we have previously pointed out, there is no distinction between a cause of action sufficient to start the running of the statute of limitations and a cause of action sufficient to support filing a legal action.

Finally, we cite United States v. City Sav. Bank & Trust Co. of Alliance, Ohio, 73 F.2d 486 (6th Cir. 1934), a case on all fours with the present case. There the government by the issuance of new bonds had redeemed bonds on which the endorsement had been forged. The government's suit in the lower court was dismissed on the grounds that "until the government had reimbursed Emmons (the true owner of the redeemed bonds) for his bonds, it had not sustained a loss which might be made the basis of an action to recover the value of those given to the appellee." *Id.* at 487. The Court of Appeals reversed the lower court, stating:

"In that case (Leather Manufacturers' Bank v. Merchants' Bank, *supra*,) it was held that the cause of action to recover back money paid on a check on which the endorsement was forged accrued at the date of payment and not at a subsequent time when the drawer of the check was reimbursed. Here the cause of action accrued upon the exchange of bonds. At that time the government became bound under the law to compensate Emmons, and, becoming so bound, suffered a loss for which it may recover."

Here the government's obligation to pay Kasar for the supplies it had received was not discharged by the checks here in question. Kasar never received the benefit of these checks, yet the government, as drawee, paid them. Under the principles heretofore discussed, the government paid its own funds and was entitled to recover them. After payment of the checks the government remained obligated to Kasar for the amount of the checks. When Kasar assigned its rights to the checks to the Insurance Company, this in no way altered the government's obligation, only the identity of the government's obligee. The fact that the government does not have funds appropriated to meet its obligations, which it recognizes as valid, in no way alters the government's obligation or right of the subrogee of Kasar to receive payment. Therefore, the government under the allegations of its complaint has suffered a loss entitling it to institute this action. The judgment of dismissal of the court below is accordingly reversed.