IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 00-21051

———————————————

YOUR INSURANCE NEEDS AGENCY INC.,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

———————————————

DAVID BRUCE EARL,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
For the Southern District of Texas

———————————————

December 4, 2001

Before REAVLEY, HIGGINBOTHAM, and PARKER, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

David Bruce Earl and Your Insurance Needs Agency, Inc. appeal
from a grant of summary judgment to the Government on their claims
for refunds of over $77,000 in tax overpayments in 1991, 1992,

1993, and 1994, inclusive, brought under 26 U.S.C. § 7422(a). We affirm.

## I.

In 1991, Earl, the sole officer and shareholder of Your Insurance, hired David Shand, a certified public accountant, to prepare and file Your Insurance's and his own federal tax returns. Pursuant to Earl's instructions and authorization, Shand prepared and submitted individual income tax returns for Earl for tax years 1991, 1992, and 1993, and payroll tax returns for Your Insurance for six quarters in 1992, 1993, and 1994.

Unbeknownst to Earl, when preparing the taxpayers' returns for each tax year in question, Shand overstated the taxpayers' tax liability on their returns and then either had Earl sign the returns or signed the returns himself with Earl's permission. Shand then produced copies of the returns for Earl, who paid the overstated tax liability as represented to him by Shand. Finally, Shand altered the signed returns to reflect a lesser, correct tax liability and inserted Shand's own office address as the address on the returns. The Internal Revenue Service authorized the Department of the Treasury to issue checks to Earl and Your Insurance for the refunds claimed, and the Treasury then issued and mailed these checks to the address—Shand's—on the returns. Shand received the checks, forged Earl's signature, and negotiated the refund checks, keeping the proceeds himself. According to IRS records, the last refund check to Earl was issued in late May 1994,

2

and the last refund check to Your Insurance was issued in late November 1994.

The IRS eventually discovered this scheme, which Shand perpetrated on many of his clients, but prosecuted and convicted Shand in 1996 for another, unrelated tax fraud scheme. Earl first learned of Shand's conduct and the existence of the refund checks in late 1994, when he was informed of Shand's fraud by Mike Harris, an investigator with the Criminal Investigation Division of the IRS.

Two years later, on February 5, 1997, Earl and Your Insurance requested that the IRS issue replacement checks. The IRS refused on November 26, 1997, stating that the IRS sent the refunds, in good faith, to the address shown on the returns and that Earl and Your Insurance should have sought replacement checks from the Financial Management System, the division within the Department of the Treasury that handles stolen Treasury checks. The IRS further indicated that the Financial Management System would not authorize the IRS to reissue the checks.

On February 25, 1999, Earl and Your Insurance filed separate suits against the United States to recover the tax overpayments. The two cases were ordered consolidated on September 14, 1999, and the parties filed cross-motions for summary judgment. On August 21, 2000, a Magistrate Judge granted summary judgment for the Government in both cases and entered final judgment. The

3

Magistrate Judge denied a Motion to Alter and Amend the Judgment on September 20, 2000.  This appeal followed.

## II.

We review a grant of summary judgment *de novo*, applying the same standard as the district court.[1]  We may affirm a summary judgment on any ground raised by the movant below and supported by the record, even if it is not the ground relied on by the district court.[2]  Additionally, "[w]e exercise plenary, de novo review of a district court's assumption of subject matter jurisdiction."[3]

## A.

The Secretary of the Treasury is required, under 26 U.S.C. § 6402(a), to issue refunds to taxpayers for overpayments of tax liabilities.  26 U.S.C. § 6511(a) sets a period of limitations for a taxpayer to file a claim for a refund, requiring that a refund claim "be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was

---

[1]  *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 257 (5th Cir. 2001).

[2]  *Id.* at 258.

[3]  *Local 1351 Int'l Longshoremens Ass'n v. Sea-Land Serv. Inc.*, 214 F.3d 566, 569 (5th Cir. 2000), *cert. denied sub nom.*, *SL Serv., Inc. v. Office & Prof'l Employees Int'l Union*, 531 U.S. 1076 (2001).

filed by the taxpayer, within 2 years from the time the tax was paid."[4]

A suit for a refund is allowed by statute, but must be preceded by a claim filed with the Secretary of the Treasury, pursuant to 26 U.S.C. § 7422(a).[5] A claim for refund must be filed in accordance with regulations issued by the Secretary of the Treasury.[6] A civil action for a refund must be brought against the United States.[7] Jurisdiction lies in the district courts in tax suits under 28 U.S.C. § 1340:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade.

---

[4] *See also* 26 U.S.C. § 6511(b)(1) ("Filing of claim within prescribed period.—No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.").

[5] *See also United States v. Williams*, 514 U.S. 527, 533 (1995); 26 C.F.R. § 301.6402-2(a)(1) (2001) ("Requirement that claim be filed. (1) Credits or refunds of overpayments may not be allowed or made after the expiration of the statutory period of limitation properly applicable unless, before the expiration of such period, a claim therefor has been filed by the taxpayer. Furthermore, under section 7422, a civil action for refund may not be instituted unless a claim has been filed within the properly applicable period of limitation.").

[6] *See* 26 U.S.C. § 7422(a); *see also, e.g.*, 26 C.F.R. § 301.6402-2(a)(2) (2001) (providing for place to file a refund claim); *id.* § 301.6402-2(b)(1) (2001) (requiring that a claim set forth grounds for the credit or refund sought).

[7] *See* 26 U.S.C. § 7422(f)(1).

5

Jurisdiction also lies in the district courts, concurrent with the United States Court of Federal Claims, for suits against the United States, under 28 U.S.C. § 1346(a)(1):

> Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

Other claims against the United States for over $10,000, however, must be brought in the Court of Federal Claims.[8]

A special scheme is also established by statute for lost or stolen and subsequently forged and paid checks issued by the Treasury. Under 31 U.S.C. § 3343(b):

> The Secretary of the Treasury shall pay from the Fund to a payee or special endorsee of a check drawn on the Treasury or a depositary designated by the Secretary the amount of the check without interest if in the determination of the Secretary the payee or special endorse establishes that—
> (1) the check was lost or stolen without the fault of the payee or a holder that is a special endorsee and whose endorsement is necessary for further negotiation;
> (2) the check was negotiated later and paid by the Secretary or a depositary on a forged endorsement of the payee's or special endorsee's name; and
> (3) the payee or special endorsee has not participated in any part of the proceeds of the negotiation or payment.[9]

---

[8] *See* 28 U.S.C. § 1346(a)(2); *see also id.* § 1491(a) (providing for the jurisdiction of the Court of Federal Claims).

[9] (footnote omitted); *see also* 31 C.F.R. § 235.1 (2001) ("This part governs the issuance of settlement checks for checks drawn on designated depositaries of the United States by accountable officers of the United States, that have been negotiated and paid on a forged or unauthorized indorsement."); *id.*

There is, however, a one-year limit on presentment of claims for replacement of forged checks: "Any claim on account of a Treasury check shall be barred unless it is presented to the agency that authorized the issuance of such check within 1 year after the date of issuance of the check or the effective date of this subsection, whichever is later."[10] Yet the same statutory section directs that "[n]othing in this subsection affects the underlying obligation of the United States, or any agency thereof, for which a Treasury check was issued."[11] The Secretary also has a statutory remedy against the depositary bank that paid a Treasury check on a forged

---

§ 235.3 (2001) (requiring the issuance of a replacement check upon receipt of "a claim by a payee or special indorsee on a check determined to have been paid on a forged indorsement under conditions satisfying the provisions set forth in 31 U.S.C. 3343"); *id.* § 245.1 (2001) ("This part governs the issuance of replacement checks for checks drawn on the United States Treasury, when (a) The original check has been lost, stolen, destroyed or mutilated or defaced to such an extent that it is rendered non-negotiable; (b) The original check has been negotiated and paid on a forged or unauthorized indorsement . . . .").

[10] 31 U.S.C. § 3702(c)(1); *see also* 31 C.F.R. § 245.3(a) (2001) ("Any claim on account of a Treasury check must be presented to the agency that authorized the issuance of such check within one year after the date of issuance of the check or within one year after October 1, 1989, whichever is later.").

[11] 31 U.S.C. § 3702(c)(2); *see also* 31 C.F.R. § 245.3(c) (2001) ("Nothing in this subsection affects the underlying obligation of the United States, or any agency thereof, for which a Treasury check was issued.").

indorsement, subject to the statute of limitations provided in 31 U.S.C. § 3712(a)(1).[12]

Finally, the Secretary of the Treasury has also issued regulations governing the mailing of refund checks. 26 C.F.R. § 301.6402-2(f)(1) (2001) provides:

> Mailing of refund check. (1) Checks in payment of claims allowed will be drawn in the names of the persons entitled to the money and, except as provided in subparagraph (2) of this paragraph (f), the checks may be sent direct to the claimant or to such person in care of an attorney or agent who has filed a power of attorney specifically authorizing him to receive such checks.

B.

The Government argues here, as it did in the district court, that this suit is a claim for replacement checks under 31 U.S.C. § 3343(b), dressed up as refund claims in order to avoid the statutory jurisdictional and limitations bars to a claim under section 3343(b) against the Check Forgery Insurance Fund. The Government urges that we reverse and remand with instructions that the district court dismiss the consolidated suit for lack of subject-matter jurisdiction.

---

[12] *See* 31 U.S.C. § 3712(a)-(b); *see also* 31 U.S.C. § 3343(g)(2) (providing that the Check Forgery Insurance Fund does not relieve "a transferee or party on a check after the forgery from liability—(A) on the express or implied warranty of prior endorsements of the transferee or party; or (B) to refund amounts to the Secretary"); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366 (1943) ("The rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law."); *United States v. First Nat'l Bank of Atlanta*, 441 F.2d 906, 908 (5th Cir. 1971) (same).

8

The response is that, pursuant to 31 U.S.C. § 3702(c)(2), a refund suit under 26 U.S.C. § 7422(a) may be brought even after a claim for a replacement check under section 3343(b) has become untimely under 31 U.S.C. § 3702(c)(1). Yet, for this contention to prevail, there must be an existing "underlying obligation of the United States, or any agency thereof, for which a Treasury check was issued."[13] The Government counters that no refund is owing, at all events, because the Treasury issued checks in the proper amounts to Earl and Your Insurance at the address provided on the face of their respective returns and the Government thereby fulfilled its underlying obligation to these taxpayers.

We will assume, without deciding, that the district court properly exercised jurisdiction over the taxpayers' claims pursuant to 28 U.S.C. § 1346(a)(1). We choose this course because, in light of 31 U.S.C. § 3702(c)(2), we have no choice but to evaluate the merits of the putative refund suit under 26 U.S.C. § 7422(a) before we may recharacterize it as properly stating only claims for replacement checks under 31 U.S.C. § 3343(b).

Moreover, even if the district court could have subject-matter jurisdiction over a section 3343(b) claim for replacement checks totaling more than $10,000, in spite of the language of 28 U.S.C. § 1346(a)(2), there is no serious dispute that the statutory requirement that a claim for replacement checks be presented to the

_____

[13] 31 U.S.C. § 3702(c)(2).

9

IRS "within 1 year after the date of issuance of the check" would bar any claim by the taxpayers for replacement refund checks under the Check Forgery Insurance Fund.[14] Even if equitable tolling applies to the one-year period prescribed by 31 U.S.C. § 3702(c)(1), there was no request for replacement checks within one year of the taxpayers' learning in late 1994 of Shand's negotiation of their refund checks on forged indorsements.

The issue for our determination, therefore, is whether the refunds for tax overpayment, disbursed by timely-issued refund checks mailed to the address shown on Earl's and Your Insurance's tax returns, remain owing when the refund checks were stolen and forged. We conclude that the Government does not owe refunds under these facts and therefore the taxpayers' argument based on the statutory language in 31 U.S.C. § 3702(c)(2), providing that the availability of the Check Forgery Insurance Fund does not affect the Government's "underlying obligation," is of no avail.

In reaching this conclusion, we find persuasive the holding of the Tax Court in *Abeson v. Commissioner* that the IRS fulfilled its obligation under its regulations by mailing refund checks to the address listed on taxpayers' returns.[15] Here, summary judgment was

---

[14]  *See id.* § 3702(c)(1).

[15]  59 T.C.M. (CCH) 391, 403 (1990), *aff'd mem. sub nom.*, *Rivera v. Comm'r*, 959 F.2d 241 (9th Cir. 1992); *see also* 26 U.S.C. § 6402(a) ("In the case of any overpayment, the Secretary . . . shall, subject to subsections (c), (d) and (e), refund any balance to such person [who made the overpayment]."); 26 C.F.R. § 301.6402-

10

properly entered for the Government because the Government timely issued refund checks and mailed them to the address on the returns, the only address the IRS had available to it, a fact not disputed. As such, the Government timely paid out the refunds, although Shand stole and negotiated the refund checks on forged indorsements before they were received.

The Government thus fulfilled its obligation to pay the refunds owed. Nonetheless, the taxpayers still had available to them a mechanism by which they could receive replacement checks for the stolen and forged refund checks issued to them. Had the Government thereby been required to pay refunds under 31 U.S.C. § 3343(b), the Government could have recovered the funds paid out by the depositary bank on the stolen and forged refund checks, subject to the statute of limitations provided in 31 U.S.C. § 3712(a)(1).[16] However, the combination of the Government's failure to pursue this remedy and the taxpayers' failure to file timely claims for replacement checks does not revive the Government's obligation to pay out refunds for the tax overpayments.

C.

---

2(f)(1) (2001) ("Mailing of refund check. (1) Checks in payment of claims allowed will be drawn in the names of the persons entitled to the money and, except as provided in subparagraph (2) of this paragraph (f), the checks may be sent direct to the claimant . . . .").

[16] *See* 31 U.S.C. § 3712(a)-(b).

11

Our conclusion is not altered by our decision in *United States v. First National Bank of Atlanta*.[17] There, we faced a situation in which government checks were issued to a government contractor "in payment of supplies ordered and received by the United States Air Force," but "these checks were endorsed, without authority, by an employee of [the contractor], in [the contractor's] name, and negotiated through the . . . third party defendant in this action, and the proceeds therefrom were converted by the employee to his own use."[18] In an action by the government to recover the funds from the bank which presented the checks to the Treasury for payment on indorsements guaranteeing prior, forged indorsements, we stated in dicta that "the government's obligation to pay [the contractor] for the supplies it had received was not discharged by the checks here in question," because the contractor "never received the benefit of these checks, yet the government, as drawee, paid them."[19]

This dicta does not change the fact that, here, the Government was only required to timely issue refund checks to the address listed on the returns. Nothing in 31 U.S.C. § 3712 requires the Government to pursue its commercial paper remedy against a depositary bank that has paid a Treasury check on a forged

---

[17] 441 F.2d 906 (5th Cir. 1971).

[18] *Id.* at 907.

[19] *Id.* at 911.

indorsement. Just as a taxpayer has, in an appropriate case, a choice between seeking payment of an underlying obligation he is still owed or seeking a replacement check,[20] so, too, the Government need not seek reimbursement from the depositary bank where the taxpayers have not filed a timely claim for a replacement check and the Government therefore has not been required to pay more than it owed.

## D.

We hold that, here, the Government fulfilled its obligation to pay the taxpayers refunds by timely issuing refund checks to the address provided on their returns. The taxpayers thereafter failed to timely file claims for replacement checks within a year of learning that their refund checks were stolen and negotiated on forged indorsements by their accountant, much less within a year of the refund checks' issuance. That failure does not obligate the Government to refund tax overpayments where it has already once taken all the steps required to issue refund checks. Summary judgment for the Government was proper whether the claims are characterized as seeking refunds for tax overpayments or replacements for stolen and forged checks.

## III.

The judgment of the district court is AFFIRMED.

---

[20] *See Naftel v. Comm'r*, 85 T.C. 527, 534 (1985).

13