IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 6, 2008

Charles R. Fulbruge III
Clerk

Summary Calendar
No. 07-30581

MICHAEL HENRY,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA; INTERNAL REVENUE SERVICE,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:02-CV-968

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

After holding a jury trial, the district court entered a judgment awarding Michael Henry a tax refund of $122,839. Henry, acting pro se, appeals on numerous grounds. We affirm.

I

This suit's facts and procedural history are complicated, and we only discuss the details necessary to resolve the present appeal. In 1999, Henry was

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

President and CEO of MegsINet, Inc. MegsINet merged with CoreComm Limited that year. As part of the merger, MegsINet shareholders received either $2.50 in cash or .21 shares of CoreComm common stock for each share of MegsINet they owned. Henry exchanged 2,106,000 shares of MegsINet stock for $2,218,718 in cash and 236,987 shares of CoreComm stock.

On his 1999 federal income tax return, Henry valued the CoreComm stock at approximately $45 per share. He also stated that his basis in the MegsINet stock was $103,000. Henry subsequently filed two amended returns. He claimed, inter alia, that his original return overvalued the CoreComm stock and understated his basis in the MegsINet stock. Before the IRS had responded to these amended returns, Henry filed a lawsuit in federal district court seeking a refund and various other relief.

The jury trial focused solely on Henry's taxable income from the CoreComm transaction. The parties agreed to present the jury with two issues: the value of the CoreComm stock Henry received, and Henry's basis in the MegsINet stock he surrendered. The jury found that the CoreComm stock was worth $35 per share, and that Henry's basis was zero. Based on the amounts Henry had previously paid the IRS, the amounts the IRS had previously refunded Henry, and these jury findings, the court entered a judgment of $122,839 in Henry's favor. The court also entered an order denying Henry's claim to an additional deduction. Henry appealed the judgment and order.

II

Henry claims the district court erred by preventing him from showing the jury his stock valuation theory. Under this theory, the CoreComm stock Henry received was worth $2.50 per share. Henry misconstrues the record. Prior to trial, the judge stated that Henry could present his theory to the jury:

> Plaintiff and his expert shall not be allowed to attempt to persuade the jury that the $2.50 cash price for shares of MegsINet stock is the best and only appropriate measure of the value of the restricted

> CoreComm stock. Plaintiff shall be permitted, however, to request that the jury consider the $2.50 cash price for each share of MegsINet stock as a relevant factor in determining the amount by which the market price for unrestricted shares of CoreComm stock should be discounted to establish a proper fair market value for the restricted shares received by Plaintiff.

Moreover, the judge allowed Henry's expert to present this valuation method at trial. Henry's premise—that the court disallowed this testimony—is invalid, so his conclusion—that the district court erred—is unsupportable. We reject this contention.

Henry also argues that the district court erred in not allowing Henry's stock valuation theory to be included in the jury instructions. As an initial matter, we observe that the court did not instruct the jury to disregard Henry's valuation method. To the contrary, the judge instructed the jury that it could consider the method Henry advanced at trial. Thus, to the extent Henry claims the judge prevented the jury from considering his valuation method, that claim is unfounded.

Although the judge did not require the jury to use Henry's valuation method, Henry has not cited (and we have not found) any case mandating this theory. Rather, valuation cases—including one that Henry cites—support the judge's instructions. The judge instructed the jury with the "willing buyer and seller" test:

> [Fair market value] is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts. The determination of the fair market value is a factual determination and you must weigh all relevant evidence of value and draw appropriate inferences. The willing buyer and the willing seller are hypothetical persons . . . . A hypothetical willing buyer and seller are presumed to be dedicated to achieving the maximum economic advantage, that is the maximum profit from the hypothetical sale of the property being

valued. The interests of both the buyer and the seller must be afforded equal weight.

Henry cites Estate of Jameson v. Commissioner of Internal Revenue[1] as correctly stating the law on valuation. That case puts forth the same test:

> The concept of fair market value represents the price that a willing buyer would pay a willing seller, if both have reasonable knowledge of the facts and neither is under compulsion. The buyer and seller are hypothetical, not actual persons, and each is a rational economic actor, that is, each seeks to maximize his advantage in the context of the market that exists at the date of the valuation. Valuation is a question of fact . . . .[2]

The district court presented valuation as a question of fact for the jury. It allowed the jury to consider both parties' evidence. We see no error in the district court's valuation instruction.

Henry argues that the judge erred in accepting the jury's verdict that Henry's basis in the MegsINet stock was zero. Because Henry raised this argument in a motion for a new trial, we construe his claim as an argument that the district court erred in denying this motion. We review the denial of a motion for a new trial for abuse of discretion.[3] "The denial will be affirmed unless, on appeal," Henry "makes a clear showing of an absolute absence of evidence to support the jury's verdict."[4]

Henry argues that his basis could not be zero. This is so, he claims, because he reached a settlement with IRS before trial. He argues that as part of the settlement, the parties agreed that Henry's basis was $524,636. Henry did not present this theory to the jury. Instead, he took the position at trial that

---

[1] 267 F.3d 366 (5th Cir. 2001).

[2] Id. at 370 (citations omitted).

[3] Whitehead v. Food Max of Miss., Inc., 163 F.3d 265, 269 (5th Cir. 1998).

[4] Id. (internal quotation marks and citations omitted).

his basis was $645,638. In opposition, the government presented evidence that Henry had failed to substantiate any basis. Only after the jury agreed with the government, and found that Henry had no basis, did Henry present the settlement theory to the court. Thus, the evidence presented at trial supports the jury's verdict, and the district court did not err.

Even if Henry had presented this theory to the jury, we would not find it sufficient to overturn the jury's verdict. Henry's only evidence of a binding settlement is an IRS form 4549. The form lists a refund amount of $240,611 for 1999, which is calculated using a basis of $524,636. The form is not signed by an IRS examiner. Moreover, it plainly states that it is "subject to acceptance by the Area Director, Area Manager or Director of Field Operations," and no such signature appears on the form. Thus, Henry presents no evidence that the IRS executed the form, and the court did not abuse its discretion in denying the motion for a new trial.

Henry relatedly argues that the district court erred in entering judgment on the jury's verdict, because the verdict is not supported by the evidence presented at trial. We review the verdict for clear error.[5] "In a refund suit, the taxpayer bears the burden of proving . . . the amount of refund to which he is entitled."[6] Henry presented no evidence at trial to substantiate his basis. IRS agent Debbie Arceneaux testified for the government. She stated that while Henry asserted a basis of $524,636, the documentation Henry provided "did not substantiate the amount of the basis that he was claiming." The evidence was therefore sufficient to support the jury's finding that Henry had not proved he had a basis in the stock.

---

[5] Gandy Nursery, Inc. v. United States, 318 F.3d 631, 636 (5th Cir. 2003) (citations omitted).

[6] Brown v. United States, 890 F.2d 1329, 1334 (5th Cir. 1989) (citations omitted).

Henry contends we should disregard Arceneaux's testimony because, he alleges, Arceneaux testified falsely. Arceneaux's truthfulness was an issue for the jury to consider, and we will not disturb the jury's determination on appeal.

Henry argues that the district court miscalculated the amount of his overpayment in entering judgment based upon the jury's verdict. We review the district court's calculation for clear error.[7] Henry only presents one specific challenge to the district court's calculation. While his argument is not entirely clear, he apparently believes the district court erred by taking into account two refunds the IRS had already paid him for 1999. The record shows that prior to the entry of judgment, the IRS issued two refunds to Henry for 1999, totaling $352,408. Henry openly acknowledged this fact to the trial court. Henry would have incurred a windfall if the district court had ignored these prior refunds. Thus, the district court's calculation was not clearly erroneous. Apart from this specific complaint, we have also reviewed the district court's calculation in whole and have found no clear error in it.

Henry contends that the district court erred by granting, and later upholding, a stay it issued pursuant to 26 U.S.C. § 7422(e).

Section 7422(e) provides that

> If the Secretary prior to the hearing of a suit brought by a taxpayer in a district court . . . for the recovery of any income tax . . . mails to the taxpayer a notice that a deficiency has been determined in respect of the tax which is the subject matter of taxpayer's suit, the proceedings in taxpayer's suit shall be stayed during the period of time in which the taxpayer may file a petition with the Tax Court for a redetermination of the asserted deficiency, and for 60 days thereafter.

During the pretrial period, the IRS issued a deficiency notice to Henry for 1999. The Government moved to stay the suit pursuant to § 7422(e). Henry opposed

---

[7] Estate of Delaune v. United States, 143 F.3d 995, 1000 (5th Cir. 1998) (citations omitted).

the motion. His position was that although the trial had not yet occurred, the district court had already issued pretrial rulings, and therefore the notice was not issued "prior to the hearing of [his] suit." The district court granted the government's motion. It concluded that in § 7422(e), "the hearing" means "the trial."

On appeal, Henry argues that the district court erred in construing § 7422(e). We review interpretations of law de novo. Assuming, without deciding, that the district court erred in this regard, this error did not prejudice Henry. The stay temporarily postponed Henry's refund action. The Internal Revenue Code requires the government to pay interest on income tax overpayments.[8] This interest compensates Henry for the delay. Thus, even assuming the court's legal conclusion was erroneous, that error did not harm Henry.

Henry relatedly argues that the deficiency notice was illicitly procured. He claims that the U.S. Attorney conspired with the IRS to enter false information into an IRS computer system, and that this conspiracy produced the deficiency notice. We construe this as an argument that the district court erred in applying § 7422(e) and review de novo. Section 7422 does not empower the district court to look behind the deficiency notice and to accept or reject it based on the IRS's means or motives. It simply requires that the proceedings "shall be stayed."[9] The district court did not err.

Henry also argues that the district court erred in declining to consider the merits of the 2004 deficiency notice. Henry challenges the district court's legal conclusion, so we review de novo. After trial, Henry filed a "Motion Regarding

---

[8] See 26 U.S.C. § 6611(a) ("Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621.").

[9] 26 U.S.C. § 7422(e).

the 2004 Assessment," in which he challenged the assessment. District courts may not consider challenges to tax assessments unless the taxpayer has previously filed an administrative claim.[10] The record does not show that Henry has filed this claim with the Secretary, nor does Henry argue that he has done so. The district court therefore did not err in declining to consider the merits of the assessment.

Henry claims that if the court correctly ruled that it lacks jurisdiction over the merits of the deficiency notice, then the court necessarily erred in dismissing the issue without prejudice. A court always has jurisdiction to consider its jurisdiction,[11] so this argument is meritless.

Henry also argues that if the court lacked jurisdiction on the merits of the deficiency notice, then it erred in staying the trial pursuant to the notice. Henry's argument is not persuasive. As stated above, the district court's obligation to stay the trial stems from 26 U.S.C. § 7422(e). That provision does not vest the district court with jurisdiction over the merits of the notice. Thus, the law required the court to stay the proceedings but prohibited the court from considering the merits of the notice. The district court did not err.

Henry argues that he is entitled to an additional refund based a $2 million dollar investment in securities that ultimately proved worthless. Henry presented this claim as count 7 of his second amended complaint. The district court granted the government's motion for partial summary judgment on this

---

[10] See 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed . . . until a claim for refund or credit has been duly filed with the Secretary . . . ."); see also Your Ins. Needs Agency Inc. v. United States, 274 F.3d 1001, 1003 (5th Cir. 2001) ("A suit for a refund is allowed by statute, but must be preceded by a claim filed with the Secretary of the Treasury.").

[11] See Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376 (1940).

count. We therefore construe Henry's argument as a claim that the court erred in granting the government's motion.

> 26 U.S.C. § 165(g) gives taxpayers a deduction for worthless securities:

> If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset.

"To be allowable as a deduction, the loss must be evidenced by closed and complete transactions, which are fixed by identifiable events."[12] The district court ruled that Henry could not claim the deduction for 1999 because no identifiable event had occurred to make the stock worthless that year. On appeal, Henry does not explain how this was error; he simply renews his claim that he is entitled to a deduction. The record does not reveal any requisite identifiable event in 1999. For example, although bankruptcy was apparently discussed at meetings in 1999, the corporation did not enter bankruptcy until August of 2000. We thus find no error in the district court's reasoning.

Henry finally presents a host of misplaced complaints and requests. He complains that outside of the present refund litigation, the IRS has undertaken illegal collection actions. He relatedly states that he is entitled to $1 million in damages under 26 U.S.C. §§ 7432 and 7433, which deal with specified wrongful actions by the IRS. Henry further asks this court to appoint a special master to help him complete his federal income tax returns, and to "notify the proper authorities" about alleged prosecutorial misconduct in this matter. Finally, Henry asserts patently frivolous claims against the district court for judicial misconduct, treason, and acting under color of state law to deprive Henry of constitutional rights. We interpret all of these arguments as claims that the district court erred by not granting the relief requested. A taxpayer in a refund

---

[12] Genecov v. United States, 412 F.2d 556, 560 (5th Cir. 1969) (internal quotation marks omitted).

suit may not raise a ground for recovery that was not presented in the original refund claim.[13]  Thus, the district court did not err in failing to grant relief on these issues.

## III

Henry has named the United States and the IRS as party defendants.  The government asks us to dismiss the IRS, because Congress has not authorized the IRS to sue or to be sued.  "Congress has not constituted the Treasury Department or any of its divisions or bureaus as a body corporate and has not authorized either or any of them to be sued eo nomine."[14]  We therefore dismiss the IRS as a party defendant.[15]

\*       \*       \*

The Internal Revenue Service is DISMISSED as a party defendant.  The district court's judgment is AFFIRMED.  The district court's order entered April 30, 2007 is AFFIRMED.

---

[13] See Mallette Bros. Const. Co., Inc. v. United States, 695 F.2d 145, 155 (5th Cir. 1983) (citations omitted).

[14] Castleberry v. Alcohol, Tobacco & Firearms Div., 530 F.2d 672, 673 n.3 (5th Cir. 1976) (citations omitted); see also Murphy v. I.R.S., 493 F.3d 170, 174 (D.C. Cir. 2007) (same).

[15] See generally Neal v. Georgia, 469 F.2d 446, 448, 450 (5th Cir. 1972) (dismissing the State of Georgia as a party defendant on appeal).