In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-3574

FULTON DENTAL, LLC,

*Plaintiff-Appellant*,

*v.*

BISCO, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 11038 — **Edmond E. Chang**, *Judge*.

ARGUED FEBRUARY 21, 2017 — DECIDED JUNE 20, 2017

Before WOOD, *Chief Judge*, and FLAUM and ROVNER, *Circuit Judges*.

WOOD, *Chief Judge*. In recent years, the Supreme Court has twice addressed the question whether an unaccepted offer to a person seeking to represent a class is capable of mooting either the putative representative's claim or the claims of the class as a whole. See *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016); *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013). The case now before us presents yet another variation

on that theme. Our putative class representative, Fulton Dental, LLC, received an unsolicited fax from Bisco, Inc., and it has sued for damages under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq*. Before Fulton moved for class certification, Bisco tried to moot its claim by tendering an offer that (Bisco says) gives Fulton all of the individual relief it could possibly expect. This offer, however, was not submitted pursuant to Federal Rule of Civil Procedure 68, as were the offers in *Genesis* and *Campbell-Ewald*. Instead, Bisco tried to use Rule 67, which allows a party to deposit a payment with the court. The district court concluded that Bisco's maneuver was enough to moot Fulton's individual claim and to disqualify it from serving as a class representative, and so it dismissed the entire action. We conclude, however, that this step was premature, and so we return the case to the district court for further proceedings.

**I**

Fulton's case against Bisco arose after Bisco faxed to Fulton a generic, unsolicited advertisement for its dental products. The TCPA prohibits such contacts, unless one of several exceptions applies, such as a previous business relationship or use of certain approved ways to obtain the fax number. In addition, the sender must include an opt-out notice in clear and conspicuous language. Violations of the TCPA can be redressed with statutory damages of $500 per negligent violation, or $1,500 per willful violation. Fulton filed a complaint against Bisco on December 8, 2015. In it, Fulton sought statutory damages for two alleged violations (lack of consent and omission of the opt-out notice), injunctive relief banning future violations, and certification of a class (to be represented

by Fulton) of all those who had similarly received faxes from Bisco.

On January 18, 2016, before Fulton had filed a motion for class certification, Bisco made Fulton an offer of judgment pursuant to Federal Rule of Civil Procedure 68. The offer was for $3,005 plus accrued costs, and it included an agreement to have the requested injunction entered against it. Two days after Bisco's offer was filed, the Supreme Court decided *Campbell-Ewald*, in which it held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." 136 S. Ct. at 672. Taking its cue from that language, Fulton rejected Bisco's offer on January 24, because the offer provided no relief to the rest of the class. Bisco then tried another tack: it moved for leave to deposit $3,600 with the district court under Rule 67. This sum represented what Bisco regarded as the maximum possible damages Fulton could receive, plus $595 for fees and costs. In light of that fact, along with its renewed acquiescence to the injunction, Bisco argued that the deposit had made Fulton's claim moot, and that the district court should thus enter judgment in Fulton's favor on the *moot* claims for $3,600 plus the injunction. Fulton opposed the latter motion, on the ground that this was not a proper use of Rule 67 and that the simple deposit of funds could not moot the case.

The district court granted Bisco's motion. It treated the Rule 67 deposit of funds as the equivalent of giving the money directly to Fulton, and it treated Bisco's offer to submit to the injunction as the equivalent of a commitment that it already had stopped sending the offending faxes. The language of mootness appears throughout the order, but the court paradoxically ordered relief on the merits. Fulton has appealed.

## II

If Bisco's deposit of money into the court's registry had the effect of mooting this appeal, we would be in a strange situation: there would no longer be a case or controversy between the parties, and we would need to dismiss the action on that basis. In essence, Bisco is arguing that it has forced a settlement that moots the case, along the same lines as the Supreme Court faced in *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994). There the Court held that the power to order vacatur of the lower court's decision remains, even if the case has become moot. *Id.* at 21. In the normal case, *Bonner Mall* continued, "mootness by reason of settlement does not justify vacatur of a judgment under review." *Id.* at 29. But the Court did not hold that the district court could take steps on the merits, as opposed to steps designed to wrap up a case such as an award of costs or a decision on vacatur. To the contrary, it said "[o]f course, no statute could authorize a federal court to decide the merits of a legal question not posed in an Article III case or controversy." *Id.* at 21.

A decision that a certain amount of damages should be paid and that an injunction should be entered is quintessentially a ruling on the merits of a case. The logic of Bisco's position is that all it had to do was deposit the estimated damages with the court in order to moot the case. It overlooks the fact that once the case is moot, the court lacks power to enter any judgment on the merits. Logically, money paid into the court's registry would either stay there for five years, after which it would escheat to the United States, see

28 U.S.C. § 2042, or perhaps Bisco could ask the court to return it. Neither of those outcomes would be very satisfactory to Fulton, nor to Bisco if escheat were the result.

Mootness, plainly, is not the correct legal concept for the course of events that took place here. See *Chapman v. First Index, Inc.*, 796 F.3d 783, 786 (7th Cir. 2015) (circulated to the full court under 7th Circuit Local Rule 40(e)). Bisco is instead talking about something more like accord and satisfaction or payment, both affirmative defenses recognized by Federal Rule of Civil Procedure 8(c)(1). Bisco insists that its Rule 67 payment somehow erased any claim that Fulton may have had against it. In order to decide whether that is true, we find it helpful to take a closer look at *Campbell-Ewald*, which intimated that such a payment might have legal effects.

The question before the Court was whether "an unaccepted offer to satisfy the named plaintiff's individual claim [is] sufficient to render a case moot when the complaint seeks relief on behalf of the plaintiff and a class of persons similarly situated." *Campbell-Ewald*, 136 S. Ct. at 666. Notably, nothing in this question is necessarily limited to a settlement offer presented pursuant to Federal Rule of Civil Procedure 68, which sets out special rules that include the "stick" of liability for post-offer costs for an offeree who gambles on trial and wins less than the offer. See FED. R. CIV. P. 68(d). To the contrary, the Court drew no distinction between unaccepted Rule 68 settlement offers and other unaccepted settlement or contract offers. It wrapped up its discussion of this issue with the following paragraph:

> In sum, an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case,

> so the District Court retained jurisdiction to ad-
> judicate Gomez's complaint. That ruling suffices
> to decide this case. We need not, and do not,
> now decide whether the result would be differ-
> ent if a defendant deposits the full amount of
> the plaintiff's individual claim in an account
> payable to the plaintiff, and the court then en-
> ters judgment for the plaintiff in that amount.
> That question is appropriately reserved for a
> case in which it is not hypothetical.

136 S. Ct. at 672.

Bisco was quick to test the issue left open by *Campbell-Ewald*. The $3,600 it paid into the district court's registry represented, in its view, an amount that fully satisfies Fulton's individual claim, either if the "offer" is accepted or if acceptance is irrelevant. It argues that by following the Supreme Court's roadmap (as it sees it), it mooted Fulton's claim and at the same time destroyed Fulton's ability to serve as a class representative. In so arguing, it has assumed that by reserving comment on this situation, the Supreme Court meant to say that a proposed settlement structured this way could be forced on a plaintiff.

That is a risky assumption; it is normally best to take the Court at its word and recognize that it reserves issues when they are not necessary to the decision in the case before it and will benefit from further attention. We begin our inquiry with a closer look at Rule 67. On its face, it is just a procedural

mechanism that allows a party to use the court as an escrow agent. Here is what it says, in its entirety:

> **(a) Depositing Property.** If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.
>
> **(b) Investment and Withdrawing Funds.** Money paid into court under this rule must be deposited and withdrawn in accordance with 28 U.S.C. §§ 2041 and 2042 and any like statute. The money must be deposited in an interest-bearing account or invested in a court-approved, interest-bearing instrument.

FED. R. CIV. P. 67. Sections 2041 and 2042 do not give any party an unrestricted right to remove money from the court's registry. Section 2041 permits "the delivery of [deposited] money to the rightful owners upon security, according to agreement of parties, under the direction of the court." Section 2042 begins with the unequivocal statement that "[n]o money deposited under section 2041 of this title shall be withdrawn except by order of court."

The First Circuit has held that "[t]he core purpose of Rule 67 is to relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitlement thereto." *Alstom Caribe, Inc. v. George P. Reintjes Co.*, 484 F.3d 106, 113 (1st Cir. 2007). What Rule 67 is *not* is a vehicle for determining ownership; that is what the underlying litigation is for. Bisco itself seems to have recognized this: after the district court entered its judgment, Bisco indicated that it might request the return of any leftover funds. That alone suggests that Bisco did not, as *Campbell-Ewald* suggested, "deposit[] the full amount of the plaintiff's individual claim in an account payable to the plaintiff." 136 S. Ct. at 672.

From a broader perspective, we see no principled distinction between attempting to force a settlement on an unwilling party through Rule 68, as in *Campbell-Ewald*, and attempting to force a settlement on an unwilling party through Rule 67. In either case, all that exists is an unaccepted contract offer, and as the Supreme Court recognized, an unaccepted offer is not binding on the offeree. Justice Thomas's opinion concurring in the judgment in *Campbell-Ewald* does not help Bisco either. He would have relied on the common law of tenders, under which "a mere offer of the sum owed is insufficient to eliminate a court's jurisdiction to decide the case to which the offer related." 136 S. Ct. at 674 (Thomas, J., concurring). At common law, he said "a plaintiff was entitled to deny that the tender was sufficient to satisfy his demand and accordingly go on to trial." *Id.* at 675 (internal quotation marks and brackets omitted). That is just what Fulton is trying to do: it is saying that its suit is about more than the statutory damages to which it believes it is entitled; it is also about the additional reward that it hopes to earn by serving as the lead plaintiff for

a class action. Nothing forces it to accept Bisco's valuation of the latter part of the case.

It is also inaccurate to say that the court's registry is "an account payable to the plaintiff." *Id.* at 672 (majority opinion). It is nothing like a bank account in the plaintiff's name—that is, an account in which the plaintiff has a right at any time to withdraw funds. As both Rule 67 and 28 U.S.C. §§ 2041 and 2042 recognize, funds can be withdrawn from the court's registry only under the control of, and with the permission of, the court. The fact that the 1983 amendments to Rule 67 clarified that a deposit into the court is permissible even if the depositor maintains an interest in the funds, which occurs (for example) in many statutory interpleader actions under 28 U.S.C. § 1335, does not mean that the court's registry functions as an individual account. Once the funds are interpleaded, they will be released to the parties who have proven an entitlement to them. The Rule simply acknowledges that one of those parties may be the original depositor.

Our conclusion here follows not just from *Campbell-Ewald*, but also from our decision in *Chapman*, *supra*, 796 F.3d 783. *Chapman* was another TCPA suit, and it too involved an effort by the defendant to pick off a plaintiff with a Rule 68 offer of judgment. *Chapman* differs from our case in that the class action there dropped out of the case before the Rule 68 offer, whereas here the Rule 67 deposit attempted to eliminate Fulton while it was still trying to represent a class. That distinction, however, is not relevant to the issue before us. Like Fulton, Chapman never replied to the offer, which lapsed according to its terms. Just as in this case, the defendant argued that its offer mooted Chapman's personal claim, and just as we have done, the court rejected that argument. Finally, the court

noted that even though the case was not moot, other hurdles still existed, including a possible affirmative defense of payment, estoppel, or waiver. The same can be said here. And this is not an unimportant point: if it turns out that the named plaintiff really has no personal stake in the litigation, the district judge might well question whether it is the appropriate champion for the class.

## III

The fact that Fulton's claim is not moot means both that its own claim remains alive and that the door is still open to a motion for class certification. We note that our sister circuits have held "that a named plaintiff in a proposed class action for monetary relief may proceed to seek timely class certification where an unaccepted offer of judgment is tendered in satisfaction of the plaintiff's individual claim before the court can reasonably be expected to rule on the class certification motion." *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1250 (10th Cir. 2011); accord *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091–92 (9th Cir. 2011); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920–21 (5th Cir. 2008); *Richardson v. Bledsoe*, 829 F.3d 273, 282–84 (3d Cir. 2016). We have observed that the safest way to preserve the option of serving as a class representative is to file a prophylactic motion for class certification at the time the lawsuit is filed, see *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011), overruled with respect to mootness analysis by *Chapman*, 796 F.3d at 787, but as the other courts have recognized, there is no reason to think that this is the only time when a certification motion is proper.

It is enough for present purposes to reconfirm that as long as the proposed class representative has not lost on the merits before a class certification motion is filed, it is not barred from

seeking class treatment. See, *e.g.*, *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982); see also *Wiesmueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008) ("A decision that the claim of the named plaintiffs lacks merit ordinarily, though not invariably, … disqualifies the named plaintiffs as proper class representatives."). In *General Telephone,* the Court cited with approval *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395 (1977). The Court held that

> [A]t the time the class was certified it was clear that the named plaintiffs were not qualified for line-driver positions, [and so] 'they could have suffered no injury as a result of the allegedly discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury.'

457 U.S. at 156. (quoting *East Texas Motor Freight*, 431 U.S. at 403–04). Importantly, however, *General Telephone* also observed that the situation would be different if the class had been certified and only after that did it appear "that the named plaintiffs were not class members or were otherwise inappropriate class representatives." *Id*. at 158.

We conclude that an unaccepted offer to settle a case, accompanied by a payment intended to provide full compensation into the registry of the court under Rule 67, is no different in principle from an offer of settlement made under Rule 68. The law governing unaccepted contractual offers, as well as the law of tenders, supports this result. Moreover, the court's registry is not the kind of "individual account" controlled by the plaintiff that was contemplated in the question reserved by *Campbell-Ewald.* Finally, we cannot say as a matter of law

that the unaccepted offer was sufficient to compensate plaintiff Fulton for its loss of the opportunity to represent the putative class.

We therefore REVERSE the judgment of the district court and REMAND for further proceedings.