RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0187p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

JOSHUA JARRETT; JESSICA JARRETT,

       *Plaintiffs-Appellants*,

    *v*.

UNITED STATES OF AMERICA,

       *Defendant-Appellee*.

No. 22-6023

─────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:21-cv-00419—William Lynn Campbell, Jr., District Judge.

Argued: July 26, 2023

Decided and Filed: August 18, 2023

Before: SUTTON, Chief Judge; DAVIS and MATHIS, Circuit Judges.

─────────────

## COUNSEL

─────────────

**ARGUED:** Cameron T. Norris, CONSOVOY MCCARTHY PLLC, Arlington, Virginia, for Appellants. Ivan C. Dale, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Cameron T. Norris, Jeffrey M. Harris, CONSOVOY MCCARTHY PLLC, Arlington, Virginia, for Appellants. Ivan C. Dale, Jennifer M. Rubin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. Audrey Patten, THE LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL, Jamaica Plain, Massachusetts, for Amicus Curiae.

─────────────

## OPINION

─────────────

SUTTON, Chief Judge. Claiming that he overpaid his 2019 taxes, Joshua Jarrett sued the Internal Revenue Service for a refund. The IRS responded by issuing a full refund check. Jarrett

refused to cash it. Even so, the district court reasoned that Jarrett had received his due and dismissed the case as moot. We agree and affirm.

## I.

Jarrett produces Tezos tokens, a form of cryptocurrency, through a process known as "staking." R.61 ¶ 4. As Jarrett sees it, staking uses existing Tezos tokens and computing power to produce new tokens. If that's so, he owes tax on the tokens only when he sells or transfers them. Only at that point would he "realize" income for tax purposes. *See* 26 U.S.C. § 61(a); *Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955); 1 Mertens Law of Fed. Income Tax'n §§ 5:1, 5:5, 20:3 (2023).

The Internal Revenue Service views the process differently. Staking, it says, involves an exchange of goods and services, just like payments, wages, compensation, and other sources of income. *See* Rev. Rul. 2023-14 (July 31, 2023), https://tinyurl.com/ysc9776k (explaining the IRS's view that staking produces "rewards" that increase gross income when the taxpayer receives them); *Updates to Questions on Digital Assets*, IRS.gov (Jan. 24, 2023), https://tinyurl.com/jayejenp (categorizing receipt of "new digital assets resulting from mining, staking and similar activities" as a taxable transaction). If that's so, Jarrett realizes income when he receives each token and owes tax on the income that year. *See* 26 U.S.C. § 61; *Glenshaw Glass Co.*, 348 U.S. at 431; 1 Mertens Law of Fed. Income Tax'n §§ 5.15, 20.3.

Timing can be everything when it comes to income taxes. Normally delay in realization, as in delay in death, benefits the taxpayer. Other times, value fluctuates, making Jarrett's tax bill turn on the value of a Tezos token at the time he realizes income. *See* 1 Mertens Law of Fed. Income Tax'n § 5:20. Since its introduction in 2018, the value of a Tezos token has ranged from seventy cents to more than eight dollars. *Tezos Price Chart*, CoinGecko, https://tinyurl.com/4y325x8y (last visited Aug. 17, 2023).

Jarrett's 2019 tax return brought these issues to the fore. That year, his staking efforts yielded 8,876 Tezos tokens. But he "did not sell, exchange, or otherwise dispose of these tokens during 2019." R.51-1 ¶ 6. At the time, the IRS treated the tokens as realized income when he produced them. He disagreed. But he also knew that federal law prevented him from contesting

his tax liability ahead of time. *See* 26 U.S.C. §§ 7421, 7422. He had to pay the tax first and ask the IRS for a refund later.

He accordingly reported the tokens that he produced in 2019 as income on his joint tax return with Jessica Jarrett, and he paid tax on them. He then asked the IRS for a refund of $3,793, arguing that he had not realized income on the tokens. By statute, the IRS had six months to respond. 26 U.S.C. § 6532(a)(1). When that time lapsed, Jarrett filed a refund lawsuit in federal district court.

A refund lawsuit permits a taxpayer to sue the government "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1). As amended, Jarrett's lawsuit asked the district court for three forms of relief: (1) a judgment that Jarrett was entitled to a refund for 2019; (2) costs and attorney's fees; and (3) a permanent injunction preventing the IRS "from treating tokens created by the Jarretts as income." R.61 at 8.

The government reversed course. The Attorney General approved Jarrett's "full refund" request and directed the IRS "to schedule an overpayment." R.51-3 at 2. The IRS subsequently "issued a refund check" for $4,001.83, the amount Jarrett paid plus statutory interest. R.41-1 at 1. The IRS mailed the check and a "Notice of Adjustment," which stated that the payment was "made in accordance with the concession authorized in [the case]." R.51-2 at 2.

Jarrett did not accept the victory. Preferring to litigate the case to judgment and claiming a right to obtain an injunction against the IRS, he has "not cashed, and [does] not intend to cash, this check, which remains in the possession of [his] counsel." R.51-2 at 2.

The government moved to dismiss the case, claiming that the full refund check ended the dispute. The district court agreed and dismissed the case as moot.

## II.

Jarrett contends on appeal that his refund claim remains a live dispute. We review the district court's mootness ruling with fresh eyes, asking whether the party asserting mootness

adequately established it.  *See Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 558 (6th Cir. 2021).

## A.

Article III grants federal courts the "judicial power" to adjudicate only "Cases" or "Controversies."  U.S. Const. art. III, § 2.  To respect that "cradle-to-grave" limitation, federal courts must ensure that a true dispute persists throughout the case.  *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011).  If adversity disappears or if a court may not grant "any effectual relief," the case becomes moot.  *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).  Federal courts lack power "to decide questions that cannot affect the rights of litigants in the case before them."  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).  They may resolve only "real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an [advisory] opinion."  *Id.* (quotation omitted).

Mootness arises when a plaintiff receives all the relief she requested or could receive in the case.  *Alvarez v. Smith*, 558 U.S. 87, 92–94 (2009).  Once whole, a plaintiff lacks a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested [judicial] relief."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).  She also lacks the necessary "'personal stake in the outcome' of the lawsuit."  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).  When a plaintiff does not stand to gain from a judicial decision, the decision enters the forbidden territory of advice.  *Mills v. Green*, 159 U.S. 651, 653 (1895).

When has a plaintiff received complete relief?  A defendant's "offer" of relief does not make a plaintiff whole or deprive a court of jurisdiction.  *Campbell-Ewald v. Gomez*, 577 U.S. 153, 165 (2016).  That's because a defendant may revoke an offer or fail to follow through, and because offers generally come with conditions and thus do not simply give the plaintiff everything she asked for.  *Id.* at 156, 165.

Actual payment—a tender of the money due—differs.  Tender occurs when a defendant "ascertain[s] . . . the sum due" and produces it.  *Peugh v. Davis*, 113 U.S. 542, 545 (1885).  He must hand over the full sum without stipulation or condition.  *See Poteete v. Cap. Eng'g, Inc.*,

185 F.3d 804, 807 (7th Cir. 1999); *cf. Chapman v. First Index, Inc.*, 796 F.3d 783, 787–88 (7th Cir. 2015). Such a tender gives the plaintiff all the relief she could receive, and as a result it moots any claim for damages.

Founding era practice recognized a similar distinction between offers and tenders. At common law, "a 'mere proposal or proposition' to pay a claim was inadequate to end a case." *Campbell-Ewald*, 577 U.S. at 170 (Thomas, J., concurring) (quoting A. Hunt, A Treatise on the Law of Tender, and Bringing Money Into Court §§ 1–2, 3–4 (1903)). A tender, by contrast, required the defendant to "actually deliver complete relief." *Id.* In some instances, if a defendant tendered "sufficient amends" before a plaintiff sued, the tender "bar[red] all actions," leaving no issue to be adjudged. 3 William Blackstone, *Commentaries* \*16; *see* 11 Geo. 2 c.19 § XX (Eng. 1734). If a defendant tendered complete relief of "the full amount due" after a lawsuit commenced, and the plaintiff agreed that the sum was "sufficient to satisfy his demand," that left only the issue of accrued costs. *Raiford v. Governor*, 29 Ala. 382, 384 (1856)**;** *see* *Campbell-Ewald*, 577 U.S. at 170–71 (Thomas, J., concurring) (same); 9 M. Bacon, A New Abridgment of the Law 341–42, 345 (1846) (similar). Similar understandings held sway under 19th-century state statutes and practice. *Campbell-Ewald*, 577 U.S. at 171–72 (Thomas, J., concurring); *Murray v. Windley*, 29 N.C. 201, 202–03 (1847) (per curiam); Hunt, *supra*, § 481; *cf. id.* § 522.

The Supreme Court's cases support the distinction. When a plaintiff receives nothing but an offer, his claims remain live. *See Campbell-Ewald*, 577 U.S. at 165–66 (majority); *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 308 (2012) (an offer accompanied by "caveats" did not produce mootness). When a plaintiff receives the relief she requested, however, "the cause of action has ceased to exist." *California v. San Pablo & T.R. Co.*, 149 U.S. 308, 313 (1893); *see Little v. Bowers*, 134 U.S. 547, 558 (1890); *San Mateo Cnty. v. S. Pac. R.R. Co.*, 116 U.S. 138, 141–42 (1885); *see also Mills*, 159 U.S. at 654–55 (collecting similar cases).

Numerous lower court decisions say the same thing—that tender of complete relief moots a claim for damages. *See Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 542 (2d Cir. 2018) (recognizing that mootness may arise when "a defendant surrenders . . . 'complete relief'" (quotation omitted)); *Duncan v. Governor*, 48 F.4th 195, 206 (3d Cir. 2022)

(acknowledging that "claims for cash can always be mooted swiftly with payment"); *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1145 (9th Cir. 2016) (stating a "consistent" view that "a claim becomes moot once the plaintiff actually receives [complete relief]" (emphasis omitted)); *Russell v. United States*, 661 F.3d 1371, 1375 (Fed. Cir. 2011) (delivering a check mooted a claim for damages); *McDermott v. United States*, 95 Fed. Cl. 70, 75 (2010) (same).

This principle applies with equal force to tax refund lawsuits. *See Lamb v. Comm'r*, 390 F.2d 157, 158 (2d Cir. 1968) (per curiam) (tendering refund mooted the refund suit); *A.A. Allen Revivals, Inc. v. Campbell*, 353 F.2d 89, 90 (5th Cir. 1965) (per curiam) (same); *Drs. Hill & Thomas Co. v. United States*, 392 F.2d 204, 205 (6th Cir. 1968) (per curiam) (same); *Cole v. Comm'r*, 15 F.3d 1084, at *2 (9th Cir. 1993) (unpublished table decision) (same); *Cath. Answers, Inc. v. United States*, 438 F. App'x 640, 641 (9th Cir. 2011) (per curiam) (same); *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1187, 1192 (11th Cir. 2011) (same). The principle may be particularly well suited for tax disputes. As in this case, many tax disputes concern a single return about a closed year. Whether it is the government or the taxpayer, it sometimes makes sense to require the objecting party to accept "yes" as the answer to such discrete and finite lawsuits. In the end, a "plaintiff who seeks to invoke judicial power" must "stand to profit in some personal interest." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 39 (1976). A plaintiff who receives complete relief for a past injury, eliminating the risk that the plaintiff leaves the dispute "emptyhanded," *Campbell-Ewald*, 577 U.S. at 165, cannot show a continuing interest in judicial process.

### B.

Gauged by these standards, the IRS's refund check mooted this case.

Refund lawsuits exist for a single purpose: "the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1); *see* 26 U.S.C. § 7422(a). The IRS satisfies its repayment obligation when it issues and mails a refund check to the taxpayer for the full amount of the overpayment. *See Your Ins. Needs Agency Inc. v. United States*, 274 F.3d 1001, 1006 (5th Cir. 2001); *Drs. Hill & Thomas Co.*, 392 F.2d at 205.

Jarrett received a full "recovery" for his refund claim for his 2019 taxes. 28 U.S.C. § 1346(a)(1). He sought $3,793 plus interest. The IRS gave him just that. It adjusted Jarrett's account to reflect that he overpaid. And it issued him a check for the full sum: $4,001.83. In doing all of this, the government "concede[d]" Jarrett's overpayment and his entitlement to the refund. Appellee's Br. 13; R.51-2 at 2 (noting the government's "concession").

By issuing Jarrett a check for the overpayment plus interest, the IRS resolved Jarrett's claim and mooted the refund lawsuit. *See A.A. Allen Revivals, Inc.*, 353 F.2d at 90 (concluding that government's tender of "the full amount of the taxes sought to be recovered, plus interest," mooted a refund lawsuit); *Drs. Hill & Thomas Co.*, 392 F.2d at 205 (same); *Lamb*, 390 F.2d at 158 (same); *Cole*, 15 F.3d 1084, at *2 (same); *Christian Coal.*, 662 F.3d at 1192 (same).

What of the reality that Jarrett has not cashed the check? We see no reason that mootness should turn on what a taxpayer does with a check any more than it should turn on whether he burns a full cash payment on the spot. *See Russell*, 661 F.3d at 1375 (delivered check mooted a damages claim even though the plaintiff "had not cashed it"); *Lohmann v. United States*, 154 Fed. Cl. 355, 363–64 (2021) (same); *see also Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1331 (Fed. Cir. 2005) (finding the point "irrelevant"). By law, the IRS pays the refund when it mails the original check. *See Your Ins. Needs Agency Inc.*, 274 F.3d at 1006 (holding that the government "paid out the refunds . . . by mailing refund checks"); *cf.* 26 U.S.C. § 6611(b)(2) (providing that the IRS's obligation to pay interest ends with the refund check "whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer"). Even the expiration of a check does not defeat payment. A taxpayer may seek a replacement check from the Treasury Department. *See* 31 U.S.C. § 3702(c)(1).

This approach to mootness, for what it's worth, runs in both directions. Just as the IRS may end a refund lawsuit by paying the refund, the taxpayer may end the IRS's collection efforts by paying what he owes. Neither one may spurn the other's check as a mere "offer" to avoid mootness. *See Mills*, 159 U.S. at 655; *see also* Appellee's Br. 37 ("The rule also applies in reverse . . . .").

C.

Jarrett's main argument in response rests on an analogy to *Campbell-Ewald*. Jose Gomez filed a putative class action after he received an unwanted text message from Campbell-Ewald. 577 U.S. at 157. The company offered Gomez $1,503 per message, the maximum amount he could receive by statute. *Id.* at 158. Gomez refused the offer. *Id.* Relying on offer-and-acceptance contract principles, the Supreme Court held that an unaccepted settlement offer did not moot Gomez's claim. *Id.* at 165–66.

There are several material differences between *Campbell-Ewald* and this case. Campbell-Ewald *offered* to pay Gomez. The IRS *paid* Jarrett. Offers differ from tenders, just as words differ from deeds. As the Supreme Court has explained, a party's statement that he "was ready and willing to pay" counts for nothing when "he did not do so." *Peugh*, 113 U.S. at 545. Confirming the point, *Campbell-Ewald* refused to "decide whether the result would be different" for actual payment. 577 U.S. at 166; *see id.* at 164 & n.5 (distinguishing cases where "the plaintiffs had received full redress").

*Campbell-Ewald* also involved a putative class action, which poses unique complications. In that setting, complete relief (say incentive payments for lead plaintiffs) may exceed the value of a lead plaintiff's damages claim. *See Geismann*, 909 F.3d at 543. Some courts worry about the risk that defendants will "pick off" the lead plaintiff to deny relief to the remainder of the class, prompting them to apply "special mootness rules" to collective litigation. *Duncan*, 48 F.4th at 204–06 (applying "picking-off exception" (quotation omitted)); *see also Geismann*, 909 F.3d at 543; *Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 545–46 (7th Cir. 2017). However sensible these mootness exceptions for class litigation may be, there is no comparable reason to depart from the usual rule that a full tender by a solvent defendant moots a damages claim in run-of-the-mine cases.

*Campbell-Ewald*'s contract analysis also lacks force in a refund setting. Jarrett claims that the government's refund check constitutes an offer that he may reject, just as Gomez could reject Campbell-Ewald's settlement offer. But that assumes away the possibility of a full tender of payment, unaccompanied by any conditions. Even in a world limited to offers and

acceptances, it seems more apt to characterize Jarrett's request for a refund as an offer that the government accepted by mailing a check.

Jarrett adds that the government has not admitted liability or agreed to an entry of a judgment. But that is not the measure of mootness. It arises even though the parties "continue to dispute the lawfulness of the conduct that precipitated the lawsuit." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). At any rate, when the IRS issued Jarrett a Notice of Adjustment, it said that the check flowed from the government's "concession" in the case. R.51-2 at 2. The government's appellate brief takes up the theme, repeating four times that it "concede[d] [Jarrett]'s entitlement" to a tax refund. Appellee's Br. 13. Aside from that, the reality that the government labeled Jarrett's return an "overpayment" and refunded the money serves as its own precedent. R.51-3 at 2. Sure, the IRS could litigate the issue in another tax year. But mootness in the context of retrospective money-damages claims does not require the government to cede the issue for all future years. One reasonable explanation for mooting a case is a party's partial, but not finally resolved, doubt about a litigation position.

Jarrett warns that the government could mail refund checks strategically, mooting refund suits whenever it wishes for all kinds of reasons. Giving a citizen everything he wants in an individual lawsuit may stem from a governmental strategy, but it is not the kind of strategy that usually raises concerns about governmental abuse, whether with respect to property or liberty. That's what it means to "unilaterally moot" a case, and courts have permitted it in the face of similar arguments about strategic tenders of full relief. *Already, LLC*, 568 U.S. at 98–99 (rejecting a similar argument). The reality that the government must pay the full refund (plus interest) to achieve mootness, and do so in the context of a lawsuit generating a published opinion about the government's concession, makes any gameplaying far from cost free.

A recent IRS revenue ruling on cryptocurrency staking does not change matters. The ruling formalizes the Service's long-tentative view that new tokens arising from staking constitute income when the taxpayer receives them. *See* Rev. Rul. 2023-14, *supra*, at 5. Releasing this "official interpretation" for the "guidance of taxpayers" may suggest that the government will not issue similar refunds going forward. 26 C.F.R. § 601.201(a)(6) (describing revenue rulings). But whatever it portends for future tax years, the ruling has no bearing on

Jarrett's 2019 taxes. The government conceded Jarrett's overpayment for that year and issued him a refund, terminating any controversy as to 2019.

Jarrett separately worries that the IRS could bring a civil lawsuit against him to recover the check as erroneously refunded. *See* 26 U.S.C. § 7405. But the government "has unequivocally stated" that it "cannot (and will not)" do that. R.42 at 10. "[H]aving taken [this] position in court," the government "would be hard pressed to assert the contrary down the road." *Already, LLC*, 568 U.S. at 94; *see DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974) (per curiam) (noting "the settled practice of the Court . . . fully to accept representations such as these").

Jarrett cites several cases in which a defendant's tender of a check did not moot the dispute. But the defendant in many of these cases turned the check over to the district court, not the plaintiff. *See Geismann*, 909 F.3d at 541 (depositing funds under Civil Rule 67); *Fulton Dental*, 860 F.3d at 546 (same); *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539, 541–42 (7th Cir. 2017) (same); *Hotel Conquistador, Inc. v. United States*, 220 Ct. Cl. 20, 33 (1979) (same). Such a deposit still means the district court must resolve some component of the case, usually through a settlement, and thus still runs the risk of leaving the plaintiff emptyhanded. *See Geismann*, 909 F.3d at 541–42. Many of these cases also involve class actions, a reality that sometimes alters the usual rules of litigation. *See Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 94–95 (1st Cir. 2021) (class action); *Geismann*, 909 F.3d at 541 (same); *Fulton Dental*, 860 F.3d at 546 (same); *Conrad*, 869 F.3d at 539, 542 (same).

Jarrett insists that, if the shoe were on the other foot, the government could refuse a taxpayer's check and avoid mooting the lawsuit. In making this argument, Jarrett invokes a section from the Justice Department's Manual that deals with "settlement offer[s]" involving a "proposed basis of compromise." *Justice Manual* §§ 6-6.400, 6-6.421 (2018), https://perma.cc/YDX2-7FT3. That section does not describe the Department's response to full and unconditional payment. In its brief and at oral argument, the government explained that full, unconditional payment moots a tax-liability dispute, regardless of whether it comes from the taxpayer or from the government. Oral Arg. at 24:32-35 (describing the "symmetric" relationship). Anything less constitutes a settlement offer that the government (and any other litigant) may reject.

Jarrett adds that his costs and attorney's fees establish that the refund check did not give him complete monetary relief. An interest in litigation costs alone, however, does not sustain Article III jurisdiction. *Lewis*, 494 U.S. at 480. A dismissal on mootness grounds would not prevent Jarrett from seeking costs or attorney's fees in any event. *See, e.g.*, *Heitmuller v. Stokes*, 256 U.S. 359, 361–62 (1921) (imposing costs after finding the case moot); *Roberts v. Neace*, 65 F.4th 280, 283 (6th Cir. 2023) (affirming an award of attorney's fees and costs issued under 42 U.S.C. § 1988 following a dismissal for mootness).

A defendant's check, we appreciate, may not moot a case if the evidence shows that the defendant will not be good for the money. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000); *Campbell-Ewald*, 577 U.S. at 185–86 (Alito, J., dissenting) (discussing offers from defendants with "shaky" finances or who have "no intention of actually paying"). But Jarrett does not claim that the United States Treasury, in debt though it may be, lacks the resources to honor this $4,001.83 check.

### III.

Jarrett argues that his alternative requests for relief prevent mootness. In addition to a tax refund for 2019, Jarrett's complaint asked for a judgment and a permanent injunction.

Neither of these requests suffices to avoid mootness in a tax refund lawsuit. Refund lawsuits, as the name suggests and statutes confirm, operate retrospectively. They determine the propriety of a previously assessed and previously paid tax, not future tax years. 26 U.S.C. § 7422; 28 U.S.C. § 1346(a)(1). Two statutes reinforce the point. Congress has deprived "any court" of the power to "restrain[] the assessment or collection of any tax" for "any person." 26 U.S.C. § 7421(a); *see id.* (listing exceptions irrelevant here); *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962) (same). Although Congress has empowered federal courts to issue declaratory judgments, it has prohibited them from doing so in lawsuits "with respect to Federal taxes." 28 U.S.C. § 2201(a). Taken together, these provisions "protect[] the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes." *NFIB v. Sebelius*, 567 U.S. 519, 543 (2012).

Jarrett's non-monetary requests for relief are inconsistent with these limitations. He requested "[a] permanent injunction against the Internal Revenue Service, preventing it from treating tokens created by the Jarretts as income." R.61 at 8. That request seeks to "restrain[] the assessment or collection" of taxes in future years, something the district court could not do. 26 U.S.C. § 7421(a); *see CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1593–94 (2021). And "[a] judgment that the disputed federal income taxes were erroneously assessed" cannot help Jarrett for his 2019 taxes because he has received the refund, R.61 at 8, eliminating any "actual controversy" as to 2019, 28 U.S.C. § 2201(a). Yes, a judgment today might help him in future tax years. But a good-for-tomorrow-only judgment would transgress the statutory ban on declaratory judgments in tax cases.

Jarrett counters that a court may award prospective relief in a refund lawsuit so long as it is ancillary to the refund claim. For support, he primarily relies on dicta and footnotes. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 748 n.22 (1974); *Cohen v. United States*, 650 F.3d 717, 740 & nn.5–6 (D.C. Cir. 2011) (en banc) (Kavanaugh, J., dissenting); *see also IRS Manual* § 34.5.2.1(2) (2004), https://tinyurl.com/3duspn7w (explaining that a taxpayer in a refund lawsuit may request "[b]oth a refund of tax and other relief, such as an injunction against the collection of similar tax in the future"). Taken on their own terms, these sources suggest only that prospective relief is not categorically inappropriate. Other dicta, for what it's worth, suggests that prospective relief is never available. *See Cohen*, 650 F.3d at 732 (majority); *King v. Burwell*, 759 F.3d 358, 367 (4th Cir. 2014), *aff'd*, 576 U.S. 473 (2015); *see also Marvel v. United States*, 548 F.2d 295, 300 (10th Cir. 1977) (refusing to recognize "a new judicial exception to the applicability of the [Anti-Injunction] Act in suits for refund").

More to the point today, the question is not whether a court may award prospective relief alongside a refund request. It is whether prospective relief alone may sustain a refund case after the refund claim itself drops out. The only circuit to answer this question disagreed with Jarrett. *Christian Coal.*, 662 F.3d at 1192 ("Absent a live refund claim," a court lacks "jurisdiction to entertain a suit containing solely forward-looking claims seeking declaratory and injunctive relief from the IRS.").

*South Carolina v. Regan* does not fill this gap.  It holds only that § 7421(a)'s bar does not apply when Congress has failed to provide "an alternative remedy."  465 U.S. 367, 381 (1984).  But in this instance Congress has provided a remedial process (refund suits) and Jarrett has received the remedy (a refund).

In a similar vein, Jarrett urges us to apply a mootness exception for issues that are "capable of repetition, yet evading review."  *Spencer v. Kemna*, 523 U.S. 1, 17 (1998).  Whether the IRS can tax cryptocurrency at creation, it is true, might well arise again.  But it also might not.  Jarrett has not filed refund claims for 2020, 2021, or 2022, and the government represents that the IRS has "no open examination [or] deficiency proceedings" concerning Jarrett's taxes for these years.  Oral Arg. at 17:50-18:26.  Neither party, moreover, has identified any other case in which another taxpayer raises this tax liability issue.  Regardless, the reality that a tax issue may arise again does not give courts license to prospectively "restrain[] the assessment or collection" of a tax.  26 U.S.C. § 7421(a); *see* 28 U.S.C. § 2201(a).  Even on its own terms, this mootness exception fits poorly here because there is nothing about tax refund disputes that makes their resolution "so short as to evade review."  *Spencer*, 523 U.S. at 18; *Christian Coal.*, 662 F.3d at 1195–96.  Plus, Jarrett has not identified any "pattern" of government attempts to avoid review of this issue.  *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174 (9th Cir. 2002) (acting to moot eight cases revealed a pattern).

*Church of Scientology of Hawaii v. United States* does not help Jarrett on this score.  485 F.2d 313 (9th Cir. 1973).  The Ninth Circuit held that a check did not moot a refund suit implicating a church's tax-exempt status because leaving the status unresolved would result in "adverse collateral consequences" aside from future tax liability.  *Id.* at 317.  Jarrett does not point to any similar consequences here.

We affirm.